UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BUILDING AND CONSTRUCTION TRADES　　　　CASE NO.  1:04cv826
DEPARTMENT, AFL-CIO, et al.

    Plaintiffs,       Judge Michael R. Barrett

  v.

UNITED STEEL WORKERS OF
AMERICA, AFL-CIO, et al.

    Defendants.

**OPINION AND ORDER**

  This matter is before the Court on the parties' cross motions for summary judgment. (Defendants' Doc. 32; Plaintiffs' Doc. 33).  These motions are fully briefed and counsel has patiently awaited this decision.

Background Facts

  Plaintiff, Building and Construction Trades Department, AFL-CIO ("BCTD") is a labor organization composed of several affiliated national and international trade unions. Plaintiff, International Union of Operating Engineers ("IUOE"), is a labor organization and an affiliate of BCTD.  Plaintiff, Local 18 International Union of Operating Engineers is an affiliate of the IUOE and is a labor organization representing equipment operators, including heavy and highway construction work, in Ohio and Northern Kentucky ("Local 18").  Defendant United Steel Workers of America and United Steel Workers of America, AFL-CIO ("USWA") represent employees in collective bargaining in a wide variety of

industries and commercial business. USWA is likewise a labor organization. Local 14581 is a labor organization chartered by the USWA and represents employees in Ohio and Kentucky.

As a result of a merger in 1971 with the International Union of District 50 Allied and Technical Workers of the United States and Canada, the USWA has represented employees in heavy and highway construction. As a result of the aforesaid 1971 merger, a contentious situation arose between USWA and BCTD regarding representation of employees working in the construction trades. The labor organizations attempted to settle their differences by means of the February 24, 1994 "Harmony Agreement" which was intended to resolve conflicts between the organizations and their constituent members. The Harmony Agreement recites the history of the approval by the AFL-CIO of the merger of District 50 into the USWA and further discusses the problems that arose between 1972 and 1977. The agreement acknowledges that conflicts continued, resulting in a 1977 agreement between the parties that eventually culminated into the Harmony Agreement in 1994.

Pursuant to the Harmony Agreement, the USWA agreed not to organize the construction employees of contractors engaged in construction within the United States except that the USWA would continue to represent employees of construction contractors currently under contract with USWA, with certain exceptions not relevant here. That is, where contracts currently existed between the USWA and individual construction contractors, USWA would seek provisions in the renewal of those contracts including a restriction to specific geographical area of coverage related as closely as practical to the state covered by the existing USWA contract, restriction of the type of construction work

performed, restriction of the occupational groups employed by the contractor, payment of wages comparable to those paid under BCTD contracts (Harmony Agreement, 2(a)-(d)) and that there be no growth or expansion of work performed by USWA-represented contractors as of the effective date of the Harmony Agreement.

> It is the intent and understanding of the parties that there shall be no growth, or expansion, of the work performed by USWA-represented contractors as of the effective date of this agreement. If in the judgment of the BCTD there is a violation of this intent and understanding, that is, there is a significant increase in the activities of the USWA-represented contractor protected by this agreement, and that increase is not explained by normal increases and decreases in the business cycle of contractors in the construction industry in the area, the USWA commits to discuss that matter with the BCTD and to take action that is necessary to implement the above-stated intent and understanding.

Harmony Agreement §2(e). USWA is also permitted to organize new contractors, only in the heavy and highway construction industry, in Pennsylvania, West Virginia, and Kentucky, subject to certain restrictions not relevant here.

BCTD agreed not to organize production and maintenance employees of employers in the basic steel, aluminum, can and non-ferrous metal industries and to not picket, refuse to handle or boycott products manufactured by employers whose employees are represented by the USWA. In addition, BCTD agreed to not organize or attempt to organize the employees of the USWA represented contractors referenced in Section 2 of the Agreement and those in Section 3, that BCTD did not object to, or in any way exert or threaten to exert economic pressure on such contractors.

The Harmony Agreement further provides that the USWA and the BCTD shall attempt to encourage resolution of disputes at local and district levels if possible. However,

if such disputes cannot be resolved, the Harmony Agreement goes on to provide for arbitration of such issues and of such conflicts. (Harmony Agreement § 7). The Harmony Agreement further provides that the decision of the Arbitrator shall be final and binding upon all the parties. (Harmony Agreement § 7(c)).

The Current Issue

Elmo Greer & Sons, LLC ("Greer") was a signatory to a collective bargaining agreement with the USWA and Local 14581 at the time the Harmony Agreement was signed. The parties do not dispute that Greer was among the oldest of the USWA signatory contractors and is a member of all three multi-employer construction contractor associations with which the USWA has agreements. One of the association's Greer belonged to was the Northern Kentucky Heavy and Highway Multi-Employer Bargaining Association with the stated geographic jurisdiction of Kentucky and Ohio. Greer and the Association have been a party to a succession of contracts with the USWA. Prior to this particular dispute, Greer had not been engaged in any Ohio projects since 1982. However, Greer did submit numerous bids for projects in Ohio but was never the successful bidder, until recently. In March, 2004, Greer was recognized by the Ohio Department of Transportation as the successful bidder on a highway construction project in Lawrence County, Ohio. Greer intended to and did perform that project using employees represented by the USWA.

The BCTD, on behalf of the IUOE and its Local 18, asserted that Local 14581's representation of Greer employees on the Ohio project was a violation of the Harmony Agreement. The BCTD and the USWA were unable to reach an agreement on the issue and the matter came before the permanent arbitrator for hearing on March 16, 2004. The

arbitrator received additional evidence and testimony through a telephone conference on April 16, 2004.  The arbitrator considered the evidence received at the hearing, the follow-up phone conference and reviewed the parties' briefs.  The arbitrator found that Greer is a heavy and highway construction contractor that is a signatory to a multi-employee contract with the USWA and its Local 14581 to cover its operations by Greer in Kentucky and Ohio and that it was a signatory to the predecessor multi-employer agreement that was in effect on February 24, 1994 and was a signatory to every intervening multi-employer agreement.  Greer had been designated as a protected USWA contractor under the Harmony Agreement well before the parties completed their protracted negotiation of the entire protected list.

The arbitrator found that although Greer was a protected contractor that since it had not engaged in any Ohio projects since 1982 Greer's Lawrence County Project was an expansion or growth prohibited by the Harmony Agreement.  Plaintiffs ask this Court to enforce the arbitration award and the Defendants ask the Court to vacate the award.

Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

However, in this matter, the Court has "only a limited role when asked to review the decision of an arbitrator." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004). "If an arbitrator's award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, we must uphold the award." *DBM Technologies, Inc. v. Local 227, United Food & Commercial Workers International Union*, 257 F.3d 651, 656 (6th Cir. 2001) *citing Gen. Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434 (6th Cir. 1999). Although this dispute does not center directly from a collective bargaining agreement, but from the Harmony Agreement, the Court finds that the same principles apply. An arbitrator's award will fail to draw its essence from the agreement when: "(1) an award conflicts with express terms in the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement." *Id*. at 656 *citing Cement Divs., Nat'l Gypsum Co. v. Union Steelworkers of America, AFL-CIO-CLC, Local 135*, 793 F.2d 759 (6th Cir. 1986); *Way Bakery v. Truck Drivers Local 164, et al.*, 363 F.3d 590, 593 (6th Cir. 2004), quoting *Int'l Union v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002).

Clearly the signatories of the Harmony Agreement understood that there would be the need to resolve future disputes between the unions similar to those in the case at bar. The parties selected arbitration as their preferred means of determination and resolution. It is beyond question that the courts may enforce an arbitration decision pursuant to the jurisdiction granted by §301 of the National Labor Relations Act. The Supreme Court has expressly held that one party may seek enforcement of the decision if such decision was obtained pursuant to the parties chosen method of settling disputes. *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Company, Inc.*, 372 U.S. 517 (1963).

In the case at bar, the arbitrator found that the *prima facie* showing that Greer's Lawrence County Project constituted prohibited growth or expansion was not rebutted by credible conflicting evidence. (Arbitration Award, Pg. 8). The arbitrator therefore sustained the complaint of the BCTD and issued no additional orders indicating, "If the Steel Workers do not promptly supply to Building Trades, an assurance of compliance that is satisfactory to Building Trades, the latter may, by notice to the umpire, invoke the further procedures of Sec. 7(d) of the Agreement." (Arbitration Award, Pg. 8). The arbitrator thereafter refused to reopen the record (Defendants Motion for Summary Judgment, Doc. 32, Exh. 5) and on Friday, November 5, 2004 conducted a telephone conference wherein it was confirmed that no written assurance of compliance was sent from USWA or its affiliate to the BCTD. This conference was in accordance with provision 7(d) of the Harmony Agreement resulting in Plaintiffs' utilization of provision of 7(e) seeking enforcement in this Court.

To be enforceable, a settlement agreement, or in this case the Harmony Agreement,

must be sufficiently specific as to be capable of implementation and Courts should not attempt to enforce settlement agreements that are too vague or too ambiguous in the meaning. *Amvest Capital Corp. v. Banco Exterior De Espana, S.A.* 675 F. Supp. 640 (S.D. Fla. 1987). "The deference the Federal Courts must give the settlement of labor dispute by an arbitrator is substantial and, in fact, this Court has called our review over such arbitration awards "one the narrowest of standards of judicial review in all of American Jurisprudence ." *DBM Technologies, supra*, at 656 *citing, Lattimer-Stevens v. United Steel Workers of America, AFL-CIO Dist. 27, Sub-Dist. 5,* 913 F.2d 1166-69 (6th Cir. 1990). "The Supreme Court has made it clear that Courts must give the arbitrator's decision substantial deference since it is the arbitrator's construction of the [ ] agreement, not the Court's construction, to which the parties have agreed." *Sterling China Co. v. Glassmolders Pottery, Plastics and Allied Workers Local No. 24, et al.*, 357 F. 3d 564, *citing*, *Wyandotte Ink Local 227, UFCW Union*, 205 F.3d 922, 928-29 (6th Cir. 2000).

Therefore, although the Court may not agree with the arbitrator's award, the Court finds that the arbitrator's award draws its essence from the Harmony Agreement and it does not conflict with the expressed terms of the agreement, it imposes no additional requirements, is rationally supported and derived from the agreement and is, in fact, based on the terms of the agreement and is sufficiently specific to be capable of implementation.

Having determined that the award on its face is not invalid the Court now considers the potential ramifications of the arbitrator's award. The Award, in essence, orders USWA to comply with the Harmony Agreement, the result of which has led to disputes between the parties. Defendants assert that enforcement of the arbitration award would necessarily

result in a violation of law as it would be required to violate the NLRA or breach its CBA with Greer. Plaintiff counters that compliance with the Award can be achieved through bilateral negotiations with Greer.[1]

Defendants argue that if the award were interpreted to mean the USWA must sever its relationship with Greer when in the State of Ohio, the USWA asserts it could not do so without violating the NLRA citing *USWA Local 14693 v. Skibeck, TLC,* 345 N.L.R.B. No. 46 (Aug. 27, 2005). Alternatively, Defendants argue that an arbitration award that requires an employer to violate another collective bargaining agreement is unenforceable as against Federal Labor policy citing *General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282 (5th Cir. 1978). Defendants further argue that unilateral negotiations with Greer would not have been successful as Greer would not consent to a change of its agreement with the USWA. In support of its position that Greer would not consent to a modification of its agreement, Defendants attached two affidavits to its motion for summary judgment.

The Court agrees with Plaintiff that Defendant should have at least attempted discussions with Greer as, after all, the stated position of any party can be construed as posturing to enhance its position. This bargaining, had it occurred, could have lead to a successful modification of the geographic scope or in the alternative, a disclaimer of the

---

[1]Plaintiff also argues that USWA's 2004 certification by the NLRB as the majority representative of Greer employees was in bad faith and should not operate as a legal impediment to the enforcement of the Award. The Court disagrees. Regardless, the issue is not relevant here since even without the certification Greer was still a signatory to three multi-employer associations who had agreements with the USWA.

entire bargaining unit. The disclaimer of interest and withdrawal from representation of a entire bargaining unit does not violate employees' rights under Sec. 8(b)(1)(A) of the NLRA as long as the disclaimer is unequivocal and in good faith. See, *Dycus v. NLRB*, 615 F.2d 8520 (9th Cir. 1980), enfg. Sub nom. *Teamsters Local 42 (Grinnell Fire Protection),* 235 N.L.R.B. 1168; Bake-Line *Products*, 329 N.L.R.B. 247, 248 (1999). USWA could certainly have informed Greer that if they were unable to negotiate the scope of the bargaining unit, then USWA had the ability to disclaim interest in representing the entire Greer unit.

However, in light of the passage of time and the affidavits setting forth that Greer would not agree to any geographical changes (see Holstein Affidavit, Exh. 2 and Greer Affidavit, Exh. 8 to Defendants' Motion for Summary Judgment), this Court finds that to have such negotiations now would be unfruitful. As such, the Court will address USWA's remaining arguments.

Defendant cites *USWA Local 14693 v. Skibeck, Inc.*, *supra*, for the proposition that *Skibeck* is a conflicting determination by the NLRB and therefore the arbitrator's award must give way to this determination. *Advance Cast Stone Co. v. Ironworkers Local 1*, 376 F.3d 734 (7th Cir. 2004). In *Skibeck* the Union disclaimed only those certain employees who were performing work in Ohio. The administrative law judge found that the disclaimer of interest was equivocal and reasoned that any disclaimer that is not co-extensive with the entire recognized or certified unit is equivocal and he therefore concluded that the respondents partial disclaimer was ineffective in relieving it of its obligation to bargain with Skibeck with respect to the employees performing work in Ohio. Since the disclaimer was only as to union members employed in Ohio, not the entire bargaining unit, the Court found

that "by such conduct, the Respondent, in essence, effectuated a unilateral change in the scope of the unit, which has long been recognized as a matter that may not be unilaterally altered by either party. (cites omitted) As a result, the Responded engaged in an unfair labor practice within the meaning of Section 8(b)(3)." *Id*. at *2.

The facts of this case are analogous to those in *Skibeck*. Thus, this Court can not order USWA to disclaim Greer's employees working in Ohio. To do so would be a violation of the NLRA. The question then remains, is it a breach of public policy for USWA to disclaim Greer's entire bargaining unit?

USWA argues that to disclaim Greer's entire bargaining unit would be a breach of the its collective bargaining agreements. Greer is a member of three multi-employer bargaining associations that have collective bargain agreements with USWA: The Pennsylvania Heavy and Highway Contractors Bargaining Association; The West Virginia Contractors Bargaining Association, Inc.; and The Heavy and Highway Contractors Multi-Employer Bargaining Association (collectively, "the Associations"). Greer has been a member of each of these associations since at least 1972, decades before the Harmony Agreement was executed. Each of the Associations' contracts covers Greer, and the other signatory employers, to work in Ohio. See Greer Affidavit, ¶3. According to the Harmony Agreement, the Associations, and their signatory employers, are protected contractors as they were executed prior to the Harmony Agreement.

Plaintiffs' argue that is not unlawful to make a full disclaimer under the NLRA and that even if it would be a breach of USWA's CBA with Greer it is uncertain if Greer would file suit. Furthermore, even if Greer did file suit any damages resulting from that suit would

be due to USWA engaging in conflicting contracts. USWA argues that it did adhered to the Harmony Agreement in good faith and that it could not have anticipated this ruling from the arbitrator. According to USWA, it and Greer both understood Greer's protected contractor status to include Ohio. Although the Court has struggled with this decision for quite some time, the Court agrees with Defendant and can not order USWA to disclaim Greer in its entirety. To do so would be a violation of public policy. Thus, the Court can not enforce the Award. The Motion for Summary Judgment of Defendants is GRANTED and the Motion for Summary Judgment of Plaintiffs is DENIED. The Clerk of Court is directed to terminate this matter from the docket of this Court.

**IT IS SO ORDERED.**

                                                                                                    s/Michael R. Barrett
                                                                                                    Michael R. Barrett, Judge
                                                                                                    United States District Court